The mandate shall issue forthwith.

**HUNTS POINT TOMATO CO., INC., Petitioner,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, United States of America, and the Secretary of Agriculture, Respondents.**

No. 06–1072–ag.

United States Court of Appeals, Second Circuit.

Nov. 13, 2006.

Paul T. Gentile, (Kevin P. Claffey, of counsel, on the brief) Gentile & Dickler, LLP, New York, NY, for Petitioner.

Leslie K. Lagomarino, Assistant General Counsel, Office of the General Counsel, United States Department of Agriculture, (James Michael Kelly & Margaret M. Breinholt, Deputy General Counsel & Assistant General Counsel, on the brief) Washington, DC, for Respondents.

Present: ROGER J. MINER, ROSEMARY S. POOLER, and ROBERT A. KATZMANN, Circuit Judges.

### SUMMARY ORDER

Petitioner Hunts Point Tomato Co., Inc. ("Hunts") petitions for review of an order of the Secretary of the United States Department of Agriculture ("USDA"), which ordered publication of the facts and circumstances of its findings: that Hunts had repeatedly and flagrantly violated the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. §§ 499a–499s. Petitioner contends, *inter alia,* that the decision not to postpone its hearing after it promised to make full payment to its suppliers was an abuse of discretion, as was the USDA's failure to take into account the possibility of repayment and other relevant mitigating circumstances before going forward with the hearing and imposing sanctions.

On March 31, 2003, the USDA filed a complaint alleging that during the period between September 2001 and June 2002, Hunts failed to make prompt and full payment to sellers of agricultural commodities, as mandated by PACA, which requires all covered entities such as petitioner to make "full payment promptly" for all purchases of perishable agricultural commodities received in interstate commence. 7 U.S.C. § 499b(4). "Full payment promptly" has been defined as, *inter alia,* payment "for produce purchased by a buyer, within 10 days after the day on which the produce is accepted." 7 C.F.R. § 46.2(aa)(5).

On August 5, 2004, five days before the hearing, Hunts requested a postponement, allegedly so that it might pay its creditors in full. The USDA declined. Hunts reiterated this request in its preliminary statement at the hearing, but offered no evidence that it had any funds available to make full payment.[1] The administrative law judge ("ALJ") found that Hunts had failed to make timely payments of over $795,000 to agricultural suppliers. The ALJ also found that Hunts' violations were repeated and willful, and since the appro-

---

1. Two of Hunts' suppliers had filed an action in the United States District Court for the Southern District of New York under 7 U.S.C. § 499e(b)(2). Pursuant to a preliminary injunction entered in that case, all of Hunts' assets are held in trust for those creditors.

priate punishment would have been license revocation, but for the fact that Hunts had allowed its license to lapse in June 2002, the appropriate sanction was to publish the facts and circumstances of Hunts' violations. *See Finer Foods Sales Co. v. Block,* 708 F.2d 774, 777 (D.C.Cir.1983).

Hunts now argues that the USDA's actions deprived it of an opportunity to avail itself of the agency's "slow pay" policy, as set forth in *In re Scamcorp Inc.,* 57 Agric. Dec. 527, 548–49 (1998), in a manner that was arbitrary and capricious. Hunts argues that since PACA is designed to promote prompt payment to the suppliers of perishable agricultural commodities, that by refusing Hunts' settlement offer (and thereby delaying payment to Hunts' creditors until after the hearing) the USDA acted in a manner contrary to PACA's purpose.

This argument is without merit. While Hunts offered evidence that it had made partial repayment, it had failed to make full payment to those suppliers to which it was admittedly seriously in arrears within 120 days of being served with the complaint. Had the ALJ postponed the hearing (and had Hunts indeed been able to make full repayment to its suppliers, a fact which is not established by the record we have before us), the same sanctions as those actually imposed would still have been applicable, since Hunts would not have been able to retroactively avail itself of *Scamcorp's* "slow pay" provisions, as Hunts would have been making payment 17 months after having been served with the complaint. Hunts' argument that the decision not to postpone the hearing re-

sulted in more serious sanctions is incorrect.

Furthermore, the USDA's purported decision to delay the repayment of creditors in order to impose sanctions was not contrary to PACA's purpose. PACA is a remedial statute designed to ensure that commerce in agricultural commodities is conducted in an atmosphere of financial responsibility. *See Harry Klein Produce Corp. v. United States Dep't of Agric.,* 831 F.2d 403, 405 (2d Cir.1987). "It is an intentionally rigorous law whose primary purpose is to exercise control over an industry 'which is highly competitive, and in which the opportunities for sharp practices, irresponsible business conduct, and unfair methods are numerous.'" *Id.* (quoting S.Rep. No. 84–2507 at 3 (1956), reprinted in 1956 U.S.C.C.A.N. 3699, 3701). Contrary to the petitioner's arguments, PACA's primary purpose is not compensatory.[2]

While petitioner also contends that the ALJ's decision was not based on substantial evidence, this argument is without merit, given Hunts' own admission that they were at one point over $1,000,000 in arrears to multiple agricultural suppliers. Accordingly, we find that the ALJ's factual findings are supported by substantial evidence, and that his conclusion that petitioner's violations were flagrant and repeated did not constitute an abuse of discretion. *See Havana Potatoes of New York Corp. v. United States,* 136 F.3d 89, 91–92 (2d Cir.1997).

Finally, petitioner's argument that the sanction here was arbitrary because lesser sanctions have been imposed in similar

**2.** If, as petitioner seemingly alleges, PACA's requirements are inconsistent with industry custom or are counter-productive, "Congress is the body that must make that judgment." *Havana Potatoes,* 136 F.3d at 94. We do not find, given PACA's "prompt payment" re-

quirement, that the application of the Secretary's regulations enforcing prompt payment are "arbitrary, capricious, or manifestly contrary to [PACA]." *See Chevron U.S.A. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

cases is not convincing. *See Harry Klein Produce Corp.*, 831 F.2d at 407 (holding that "PACA does not require uniformity of sanctions for similar violations."). We have carefully considered petitioner's remaining arguments and find them to be without merit. Accordingly, the petition is DENIED and we direct enforcement of the USDA's order.